IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 24-cv-02802-GPG-KAS

HAWKINS, Levron of the Family,

    Plaintiff,

v.

REGION 8 IV-D AGENCY,
LARRY DESBIEN,
IV-D AGENCY IN ARAPAHOE COUNTY, and
BOB PREVOST,

    Defendants.
_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____
**ENTERED BY MAGISTRATE JUDGE KATHRYN A. STARNELLA**

    This matter is before the Court on the **Motion to Dismiss Plaintiff's Complaint** [#10][1] (the "Motion"), filed by Defendant Bob Prevost ("Prevost"). Plaintiff, who proceeds as a pro se litigant,[2] filed a Response [#22-1] to the Motion [#10],[3] and Defendant Prevost filed a Reply [#25]. The Motion [#10] has been referred to the undersigned for a

---

[1] "[#10]" is an example of the convention that the Court uses to identify the docket number assigned to a specific filing by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Recommendation.

[2] The Court must liberally construe the filings of a pro se litigant. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). In doing so, the Court should neither be the pro se litigant's advocate nor "supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1175 (10th Cir. 1997) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)).

[3] Plaintiff's Response [#22-1] is titled "Affidavit" both on the electronic docket and on the docket itself, but this filing is clearly intended to be his Response to the Motion [#10]. *See* [#22-1] at 1 ("I am in fact filing a response to the motion to dismiss Bob Prevost[.]"; *see also* [#22-2] (Certificate of Service stating that Plaintiff sent a copy of the "written response to 'Motion to Dismiss'" to Defendant Prevost (and others)).

recommendation pursuant to 28 U.S.C. § 636(b), Fed. R. Civ. P. 72, and D.C.COLO.LCivR 72.1. *See* [#15].

Further, this matter is before the Court on the Court's **Order to Show Cause** [#30] issued on March 26, 2025. Plaintiff timely filed a Response [#31] to the Order to Show Cause [#30]. The Court has reviewed the briefings, the entire case file, and the applicable law. For the following reasons, the Court **RECOMMENDS** that the Motion [#10] be **GRANTED** and that, pursuant to the Order to Show Cause [#30], Defendants Region 8 IV-D Agency, Larry Desbien ("Desbien"), and IV-D Agency in Arapahoe County be **DISMISSED without prejudice**.[4]

### I. Background

Plaintiff's Complaint [#1] is not a model of clarity with respect to the allegations underlying his claims. As part of his Motion [#10], Defendant Prevost includes two orders from the Arapahoe County District Court which help to elucidate the background of this lawsuit. *See Order for Paternity & Child Support* [#11]; *Order re: Motion to Modify Child Support* [#12]. The Court may consider these two court orders in connection with adjudication of the present Motion [#10], because they are subject to judicial notice. *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006).

On March 27, 2019, the Arapahoe County District Court issued an Order for Paternity and Child Support [#11] in Case Number 18JV861. Therein, the court found that

---

[4] The Court noted in the Order to Show Cause [#30] that, based on the Court's review of Plaintiff's Complaint [#1], the allegations were unclear as to whether "Region 8 IV-D Agency" and "IV-D Agency in Arapahoe County" were separate Defendants, as these names could be referring to the same agency. *See* [#30] at 2 n.1. Plaintiff's Response [#31] to the Order to Show Cause [#30] did not explicitly resolve this issue, although he seems to indicate that the agencies are one and the same. *See* [#31] at 3. Regardless, resolution of that issue is not necessary for resolution of the Order to Show Cause [#30].

2

Plaintiff was "the legal and biological father of the child" D.K. and that he therefore "owe[d] a duty of support" to D.K. *See* [#11] at 1. The Court ordered that D.K.'s birth certificate be amended with Plaintiff named as D.K.'s father. *Id.* at 2. Plaintiff was not ordered to pay any retroactive child support but was ordered to pay a specific amount per month starting in April 2019 as support for D.K. *Id.* Payments were to be made through the Family Support Registry rather than directly to D.K. or D.K.'s mother. *Id.* The order was "entered with consent of the parties." *Id.* at 3. Several years later, on December 5, 2022, the Arapahoe County District Court issued an Order re: Motion to Modify Child Support [#12] in Case Number 18JV861. Therein, the amount of child support Plaintiff was required to pay was increased, beginning immediately. *See* [#12] at 1.

Plaintiff refers to "Title IV-D" and "IV-D" customs, policies, and/or usage throughout his Complaint [#1]. *See, e.g., Compl.* [#1] ¶¶ 13, 24, 30-32, 36, 52-5. These references appear to be to Title IV-D of the Social Security Act, which "requires states to meet certain standards and criteria in their child support enforcement programs to receive federal funding." *Blanchard v. Woltman*, No. 24-cv-2290-JWB, 2025 WL 949037, at *2 (D. Kan. Mar. 28, 2025). Plaintiff's lawsuit appears to stem from child support enforcement actions taken against him. For example, he states that Defendants have "compel[ed] payment of a fee or reward for his services, under color of her official authority, where no payment is due," *Compl.* [#1] ¶ 15; that Defendants "hunt [him] down" and "rename [him] non-custodial parents/obligor against [his] will in order [to] enforce *quasi*-judicial IV-D propaganda," *id.* ¶ 18; and that Defendants have engaged in "wage withholding," *id.* ¶ 38.

Based on these allegations, Plaintiff brings six claims against Defendants: (1) Claim One: discrimination under Title VI, 42 U.S.C. § 2000d, et seq., against Defendants

3

Region 8 IV-D Agency and Desbien, *Compl.* [#1] ¶¶ 23-26; (2) Claim Two: violation of the Fifth and Fourteenth Amendments' due process clauses against Defendants Region 8, Desbien, and Prevost, *id.* ¶¶ 27-32; (3) Claim Three: violation of the Fourteenth Amendment's equal protection clause against Defendants Region 8 IV-D Agency, Desbien, and Prevost, *id.* ¶¶ 33-36; (4) Claim Four: violation of the Fourth Amendment against Defendants Region 8, Desbien, and Prevost, *id.* ¶¶ 37-40; (5) Claim Five: involuntary servitude, in violation of the Thirteenth Amendment, against Defendants Region 8 IV-D Agency, Desbien, and Prevost, *id.* ¶¶ 41-49; and (6) Claim Six: "rights violation by false advertisement" pursuant to 15 U.S.C. § 15 against Defendants Region 8, Desbien, and Prevost, *id.* ¶¶ 50-56.

As relief, Plaintiff seeks compensatory and punitive damages against Defendants in a combined amount of $180,000; he asks the Court to "[t]erminate alleged arrears of $13,000.00, and remove said from [his] credit history"; he wants Defendants to refund him "$60,000.00 in full at 6% interest"; and, finally he asks the Court to "[a]ward termination of IV-D security interest # 1620167 & 11309523 with zero dollar amount of arrears[.]"[5] *Id.* at 6-7, 16. In the present Motion [#10], Defendant Prevost moves to dismiss all claims asserted against him, i.e., Claims Two through Six pursuant to Fed. R. Civ. P. 12(b)(1).[6]

---

[5] Plaintiff does not elsewhere explicitly mention the "IV-D security interest # 1620167 & 11309523."

[6] Defendant Prevost also seeks dismissal pursuant to Fed. R. Civ. P. 12(b)(6), but the Court does not reach those arguments because of its findings below regarding a lack of subject matter jurisdiction.

4

## II. Legal Standard

"To survive a 12(b)(1) motion to dismiss, a plaintiff must demonstrate that the court has subject-matter jurisdiction." *Audubon of Kan., Inc. v. U.S. Dep't of Interior*, 67 F.4th 1093, 1108 (10th Cir. 2023). "The party invoking federal jurisdiction has the burden to establish that it is proper, and there is a presumption against its existence." *Salzer v. SSM Health Care of Okla. Inc.*, 762 F.3d 1130, 1134 (10th Cir. 2014) (internal quotation marks omitted).

A Rule 12(b)(1) challenge may take two different forms. "The moving party may (1) facially attack the complaint's allegations as to the existence of subject matter jurisdiction, or (2) go beyond allegations contained in the complaint by presenting evidence to challenge the factual basis upon which subject matter jurisdiction rests." *Maestas v. Lujan*, 351 F.3d 1001, 1013 (10th Cir. 2003). "When resolving a facial attack on the allegations of subject matter jurisdiction, a court must accept the allegations in the complaint as true." *Graff v. Aberdeen Enterprizes, II, Inc.*, 65 F.4th 500, 507 (10th Cir. 2023) (citation omitted). "When the moving party attacks the factual basis for subject matter jurisdiction, on the other hand, a court 'may not presume the truthfulness of the factual allegations in the complaint, but may consider evidence to resolve disputed jurisdictional facts.'" *Id.* (quoting *SK Fin. SA v. La Plata Cnty., Bd. of Cnty. Comm'rs*, 126 F.3d 1272, 1275 (10th Cir. 1997)).

## III. Analysis

### A.    Defendant Prevost

Defendant Prevost appears to be sued in his official capacity only. Plaintiff does not provide any non-conclusory allegations of actions personally taken by Defendant

5

Prevost. Further, in his Response [#22-1], although he states that Defendant Prevost is sued in his "unofficial and or official capacity," Plaintiff does not point to any non-conclusory actions personally taken by him. Therefore, the Court construes Plaintiff's claims against Defendant Prevost as asserted against him in his official capacity only, as Deputy Director for the Arapahoe County Department of Human Services ("ACDHS").[7] *Motion* [#10] at 2.

### 1.     Eleventh Amendment

Defendant Prevost argues that Eleventh Amendment immunity bars Plaintiffs' claims for damages. *Motion* [#10] at 9-11; *Reply* [#25] at 4-5.

Official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent[.]" *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978). In all respects other than name, an official-capacity suit is treated as a suit against the entity. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Because the entity is the real party in interest, officers sued in their official capacity may invoke "forms of sovereign immunity that the entity, *qua* entity, may possess, such as the Eleventh Amendment." *Id.* at 167; *see also Muscogee (Creek) Nation v. Okla. Tax Comm'n*, 611 F.3d 1222, 1233 (10th Cir. 2010) ("When a state official is sued in his or her official capacity, the Eleventh Amendment bars retrospective relief, usually in the form

---

[7] To the extent Plaintiff actually intends to assert individual capacity claims, they would fail anyway. Claims Two through Five, which assert violations of the Fourth, Fifth, Thirteenth, and Fourteenth Amendments, require non-conclusory allegations of personal participation, which are lacking here. *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997) ("Individual liability under [42 U.S.C.] § 1983 must be based on personal involvement in the alleged constitutional violation."); *see also Duffield v. Jackson*, 545 F.3d 1234, 1239 (10th Cir. 2008) (stating that supervisory status alone does not create § 1983 liability). Regarding Claim Six under 15 U.S.C. § 15, there is no private right of action for a consumer or member of the public at large to enforce this provision. *Holloway v. Bristol-Meyer Corp.*, 485 F.2d 986, 988-89 (D.C. Cir. 1973).

of money damages, because any such judgment is deemed directed at the state as the real party in interest rather than the nominal officer.") (citing *Edelman v. Jordan*, 415 U.S. 651, 664-71 (1974)).

The Tenth Circuit has not explicitly held that ACDHS is an arm of the state. *See K.A. v. Barnes*, 134 F.4th 1067, 1073 (10th Cir. 2025). However, all cases of which the Court is aware which have addressed the issue have held that it is. *See, e.g.*, *K.A. v. Barnes*, No. 23-cv-01558-NYW-KAS, 2024 WL 216676, at *6 (D. Colo. Jan. 19, 2024); *Wigger v. McKee*, 809 P.2d 999, 1004 (Colo. App. 1990) (holding ACDHS to be an arm of the state). Given the absence of any identified authority to the contrary, the Court here, too, finds that ACDHS, and thus Defendant Prevost in his official capacity, is an arm of the state for purposes of Eleventh Amendment immunity.

There are three exceptions to Eleventh Amendment immunity: (1) a State may consent to suit in federal court; (2) Congress may abrogate the states' Eleventh Amendment immunity; and (3) the doctrine of *Ex parte Young*, which allows suit for prospective relief against individual state officers in their official capacities for an ongoing violation of federal law. *Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1166 (10th Cir. 2012); *see also Ex parte Young*, 209 U.S. 123 (1908). The *Ex parte Young* exception is narrow; it "may not be used to obtain a declaration that a state officer has violated a plaintiff's federal rights in the past." *Buchwald v. Univ. of N.M. Sch. of Med.*, 159 F.3d 487, 495 (10th Cir. 1998).

Regarding the first exception, the record contains no indication that the State has here consented to suit in federal court. Regarding the second exception, 42 U.S.C. § 1983 does not constitute a congressional abrogation of state sovereign immunity. *See Davis v.*

7

*California*, 734 F. App'x 560, 564 (10th Cir. 2018) ("Section 1983 . . . does not abrogate the states' sovereign immunity and neither the states nor their agencies qualify as 'persons' under § 1983."). Plaintiff appears to argue that 42 U.S.C. § 659 demonstrates congressional abrogation of Eleventh Amendment immunity in this context. *Compl.* [#1] at 16 (stating that Defendants "act[ed] through a 42 U.S.C. § 659(a)(b) (i)(4) private person(s) who does not have sovereign or other special immunity or privilege which causes the person not to be subject to legal process"). However, this provision demonstrates consent by only the United States and the District of Columbia to be sued with respect to income withholding, garnishment, and other similar proceedings for the enforcement of child support and alimony obligations. 42 U.S.C. § 659(a); *see DeTienne v. DeTienne*, 815 F. Supp. 394, 396 (D. Kan. 1993) ("Section 659(a) plainly authorizes the garnishment of wages payable to federal employees for the purpose of satisfying such federal employees' obligations under state court decrees to pay child support or alimony."). This statute has no applicability to suits against a state or an arm of the state. Therefore, the Court finds that the second exception is inapplicable here.

Finally, the third exception, *Ex parte Young*, only applies to prospective injunctive relief, not damages or retrospective declaratory relief. *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 145-46 (1993); *Collins v. Daniels*, 916 F.3d 1302, 1316 (10th Cir. 2019).

Accordingly, the Court **recommends** that Plaintiff's claims for damages against Defendant Prevost be **dismissed without prejudice** on Eleventh Amendment immunity grounds. *See Rural Water Sewer & Solid Waste Mgmt., Dist. No. 1, Logan Cnty., Okla.*

*v. Guthrie*, 654 F.3d 1058, 1069 n.9 (10th Cir. 2011) ("[A] dismissal on sovereign immunity grounds or for lack of standing must be without prejudice.").

### 2. *Younger* Doctrine

Defendant Prevost further asserts that abstention bars Plaintiff's claims pursuant to *Younger v. Harris*, 401 U.S. 37, 43 (1971). *Motion* [#10] at 7-9; *Reply* [#25] at 3-4. Liberally construing the Complaint [#1], Plaintiff is asking for injunctive relief with respect to how the state court's child support orders have been enforced against him.[8] *See, e.g.*, Compl. [#1] ¶¶ 8, 57(2).

In general, *Younger* applies where "(1) there is an ongoing state criminal, civil, or administrative proceeding, (2) the state court provides an adequate forum to hear the claims raised in the federal complaint, and (3) the state proceedings involve important state interests." *Covington v. Humphries*, No. 24-1158, 2025 WL 1448661, at *3 (10th Cir. May 19, 2025) (citation and internal quotations omitted). However, before these elements are even considered, the Court must determine whether the case falls into one of the "three 'exceptional' categories of state proceedings" approved by the United States Supreme Court. *Id.* Those three categories, as enunciated in *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69 (2013), are: (1) criminal prosecutions, (2) certain "civil enforcement proceedings," and (3) "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." *Id.*

---

[8] The type of injunctive relief requested by Plaintiff is not entirely clear, but the Court believes this construction to be his most likely intent. To the extent Plaintiff is asking the Court here to review the state court child support orders themselves or to issue orders to supplant or overrule the state court orders, such actions are barred by the domestic-relations exception to federal court jurisdiction. *See Alfaro v. County of Arapahoe*, 766 F. App'x 657, 660 (10th Cir. 2019) (holding that the domestic-relations exception applied where the plaintiff asked the federal court to "scrutinize[ ]" the "legal merits" of "each order" in the state court divorce and child-custody proceedings).

9

Here, Plaintiff's suit concerns child support ordered by a state court. *See generally Compl.* [#1]. There is no indication that the support orders, or the enforcement thereof, relate to any criminal prosecution, and thus the first exception does not apply. *See Covington*, 2025 WL 1448661, at *5 (stating that "[t]he first category does not apply because the state [domestic relations] case is not a criminal prosecution").

The second exception "includes certain civil enforcement proceedings that are akin to a criminal prosecution in important respects." *Id.* at *4 (citations and internal quotation marks omitted). In general, this includes situations where a state actor has initiated enforcement proceedings against the plaintiff in state court, often for purposes of sanctioning. *Id.* Here, there is no indication that any formal enforcement proceedings have been initiated against Plaintiff which could be properly construed as "akin to a criminal prosecution." *Id.* Thus, the second exception does not apply. *See id.* at *5 ("The second category does not apply because the domestic relations proceedings are not civil enforcement proceedings brought by state actors against private parties.").

The third exception includes "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." *Id.* at *3. In short, this "includes orders and processes that lie at the core of the administration of a State's judicial system and through which the state vindicates the regular operation of its judicial system[.]" *Id.* at *4 (internal quotation marks and brackets omitted). Federal courts have repeatedly held that child support enforcement proceedings fit this third *Sprint* category. *See, e.g.*, *Stephens v. Child Support Servs. of Okla. Dep't of Human Servs.*, No. 24-cv-216-JDR-CDL, 2025 WL 1194950, at *4 (N.D. Okla. Apr. 25, 2025) ("Although [the plaintiff] does not directly challenge any state-court orders pertaining to divorce in her

10

motion, she does contest the seizure of funds to pay a child-support award and she disputes the power and authority of those involved in the state-court proceedings."); *Gibson v. Lopez*, No. 21-cv-02610-WJM-NYW, 2022 WL 2158986, at *6 (D. Colo. June 15, 2022) ("[The plaintiff] is challenging the state's efforts to collect child support payments from him, including whether any of his funds were improperly seized, . . . which relate to the child support orders negotiated in and supervised by [the state] court[.]"). Here, too, as in *Stephens* and *Gibson*, the present case falls into the third *Sprint* category.[9]

As noted above, the *Younger* abstention doctrine requires federal district courts to abstain from exercising jurisdiction where "(1) there is an ongoing state criminal, civil, or administrative proceeding, (2) the state court provides an adequate forum to hear the claims raised in the federal complaint, and (3) the state proceedings involve important state interests." *Covington*, 2025 WL 1448661, at *3. "*Younger* governs whenever the requested relief would interfere with the state court's ability to conduct proceedings, regardless of whether the relief targets the conduct of a proceeding directly." *Joseph A. ex rel. Corrine Wolfe v. Ingram*, 275 F.3d 1253, 1272 (10th Cir. 2002).

---

[9] The Tenth Circuit Court of Appeals recently rejected application of the *Younger* doctrine in a closely related context, i.e., where there was "a Colorado domestic relations case regarding [the parties'] marriage dissolution and parenting of their children[.]" *See Covington v. Humphries*, No. 24-1158, 2025 WL 1448661, at *1 (10th Cir. May 19, 2025). There, the Circuit held that "[t]he July 2022 order address[ing] a parenting time dispute and evidentiary issues about [the defendant's] alleged child abuse . . . [did] not lie at the core of the administration of the State's judicial system, . . . [did not] implicate the state's contempt process . . . or other processes by which the State compels compliance with the judgments of its courts, [did not] ensure that state courts can perform their functions, . . . [a]nd [did] not concern the state court's ability to enforce compliance with judgments already made." *Id.* at *5 (internal citations, quotation marks, and brackets omitted). The Circuit specifically noted, though, that *Younger* could still apply to some state court domestic relations cases, so long as the specific "circumstances fall into a *Sprint* category." *Id.* at *5 n.10. Here, Plaintiff's requests for injunctive relief appear to go directly to the mechanisms through which the state court enforces compliance with its orders/judgments in child support proceedings.

11

Here, regarding the first element, there is no dispute that enforcement of the underlying child support orders is ongoing. *See, e.g.*, *Motion* [#10] at 8-9; *Response to Order to Show Cause* [#31] at 3 (stating that Plaintiff "continue[s] to get garnished illegally"); *see also, e.g.*, *Stephens*, 2025 WL 1194950, at *5 (noting under this element that "the Tulsa court will continue to exercise jurisdiction over the domestic relationships in that case during the years to come"). The Court therefore finds that the first element is met.

Regarding the second element, Plaintiff does not sufficiently explain why the state proceedings are an inadequate forum for him to assert his claims. Indeed, in the absence of argument to the contrary, federal courts presume that the state courts will safeguard a plaintiff's federal rights. *See Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982). In addition, other federal courts have specifically found that the Arapahoe County District Court is an adequate forum for a plaintiff to assert his federal claims relating to domestic relations issues, including child support enforcement. *See, e.g., Gibson*, 2022 WL 2158986, at *6 ("[T]he court finds the Arapahoe County District Court provides an adequate forum to hear the federal claims that [the plaintiff] raises in this case—namely, Plaintiff's constitutional challenges to the amount of child support he owes and whether any of his funds were improperly seized."). The Court therefore finds that the second element is met.

Regarding the third element, the injunctive relief Plaintiff seeks—which appears to include alteration and/or elimination of the enforcement of state court child support orders—would interfere with the state family court's ability to conduct proceedings and resolve current and any future disputes about child support. *See Gibson*, 2022 WL

12

2158986, at *4 (noting that the doctrine applies to federal suits because a successful litigant "could take their federal judgment to the state court and attempt to enjoin, interfere with, or use the judgment for its purported preclusive effect in the state court proceedings") (citing *D.L. v. Unified Sch. Dist. No. 497*, 392 F.3d 1223, 1228 (10th Cir. 2004)). Additionally, domestic disputes, including child support disputes, implicate important matters of state interest. *See Wideman v. Colorado*, 242 F. App'x 611, 614 (10th Cir. 2007) (applying *Younger* abstention doctrine to lawsuit arising from ongoing custody proceedings which implicate important state interests); *see also Johnson v. Domestic Rels. Sec.*, No. 18-1294-JWB-GEB, 2019 WL 1915563, at *3 (D. Kan. Apr. 30, 2019) (noting that ongoing child support proceedings implicate important state interests). Further, any allegations of misconduct relating to state court enforcement proceedings "are matters of state interest of the first magnitude." *Stauffer v. Hayes*, No. 08-cv-00815-WYD-BNB, 2008 WL 5682093, at *8 (D. Colo. Dec. 12, 2008) (applying *Younger* abstention in light of ongoing state proceedings that could address allegations of fraud and official misconduct by a state judge and licensed attorneys), *recommendation adopted by* 2009 WL 724050 (D. Colo. Mar. 19, 2009). The Court therefore finds that the third element is met.

Thus, the Court finds that the three conditions for application of the *Younger* abstention doctrine are met. Accordingly, the Court **recommends** that Plaintiff's claims for injunctive relief against Defendant Prevost be **dismissed without prejudice** for lack of subject matter jurisdiction. *See, e.g.*, *Eagar v. Drake*, 829 F. App'x 878, 885 (10th Cir. 2020) ("Dismissals for lack of jurisdiction [are] without prejudice because the court, having

determined that it lacks jurisdiction over the action, is *incapable* of reaching a disposition on the merits of the underlying claims.") (alterations in original)).

**B.     The Remaining Defendants**

On March 26, 2025, the Court issued an Order to Show Cause [#30] regarding service on the other named Defendants: (1) Region 8 IV-D Agency, (2) Larry Desbien, and (3) IV-D Agency in Arapahoe County. *See* D.C.COLO.LCivR 41.1 ("A judicial officer may issue an order to show cause why a case should not be dismissed for lack of prosecution or for failure to comply with these rules, the Federal Rules of Civil Procedure, or any court order."). The Order to Show Cause [#30] was issued because the Court's review of the docket had revealed that these three Defendants have not been served with the summons and operative complaint in this action and, therefore, were not proper parties.

Plaintiff filed this civil action in the United States District Court for the Middle District of Tennessee on August 6, 2024. *See Receipt* [#2]. Thus, pursuant to Fed. R. Civ. P. 4(m), the 90-day deadline to serve all Defendants was November 4, 2024. On October 9, 2024, the action was transferred to the District of Colorado. *See Order* [#5]. As noted in the transfer order, all Defendants "appear to be domiciled in Colorado; the Court takes judicial notice of state and local government websites indicating that these agencies and individuals are involved in the administration of child support services in the Denver area." *Id.* at 1 (footnote omitted).

On December 13, 2024, Plaintiff filed a summons returned unexecuted as to Defendant Desbien, in which the process server stated: "Tried his office 4 times and he is never available." *See* [#20]; *see also Response* [#31] at 5-6 ("Service Status Reports"

14

as to Defendant Desbien). The electronic docket contains no indication that Plaintiff has attempted to serve either Defendant Region 8 IV-D Agency or Defendant IV-D Agency in Arapahoe County. The Order to Show Cause [#30] required Plaintiff to show cause why these three Defendants should not be dismissed pursuant to Fed. R. Civ. P. 4(m) and/or Fed. R. Civ. P. 41(b). Plaintiff was required to file proof of service on these Defendants or show good cause why the deadline for service should be extended. He was warned, in bold font, that failure to do so would result in a recommendation that his claims be dismissed against these three Defendants.

The Court finds that Plaintiff's Response [#31] to the Order to Show Cause [#30] does not show that he has served these three Defendants and does not demonstrate good cause to further extend the deadline for service. Plaintiff essentially asserts that he has tried to complete service on Defendant Desbien, but it does not demonstrate that he has been continuing to attempt to complete service on him or that allowing additional time would permit Plaintiff to effectuate service. Further, the docket contains no indication that Plaintiff has attempted service on the two agency Defendants themselves.

Where good cause is not demonstrated for an extension of the service deadline, the Court "*must* dismiss the action without prejudice against that defendant[.]" Fed. R. Civ. P. 4(m) (emphasis added). Accordingly, the Court **recommends** that Plaintiff's claims against Defendants Region 8 IV-D Agency, Larry Desbien, and IV-D Agency in Arapahoe County be **dismissed without prejudice**.[10]

---

[10] "Because the Court is dismissing the case under Rule 4(m) which provides that the court 'must' dismiss the [defendant without prejudice] if good cause is not shown, the *Ehrenhaus* [*v. Reynolds*] factors are not relevant." *Sandoval v. McKinley Cnty. Adult Det. Ctr.*, No. 20-cv-00162-KWR-JFR, 2020 WL 5110624, at *3 (D.N.M. Aug. 31, 2020) (referring to *Ehrenhaus v. Reynolds*, 965 F.2d 916, 922 (10th Cir. 1992)).

## IV. Conclusion

Based on the foregoing,

IT IS HEREBY **RECOMMENDED** that the Motion [#10] be **GRANTED**, and that Plaintiff's claims against Defendant Prevost be **DISMISSED without prejudice**.

IT IS FURTHER **ORDERED** that the Order to Show Cause [#30] is **MADE ABSOLUTE**. Therefore,

IT IS FURTHER **RECOMMENDED** that Plaintiff's claims against Defendants Region 8 IV-D Agency, Larry Desbien, and IV-D Agency in Arapahoe County be **DISMISSED without prejudice**.

IT IS FURTHER **ORDERED** that any party may file objections **within 14 days** of service of this Recommendation. In relevant part, Fed. R. Civ. P. 72(b)(2) provides that, "within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. 2121 E. 30th St.*, 73 F.3d 1057, 1060 (10th Cir. 1996). The objection must be "sufficiently specific to focus the district court's attention on the factual and legal issues that are truly in dispute." *Id.* "[A] party who fails to make a timely objection to the magistrate judge's findings and recommendations waives appellate review of both factual and legal questions." *Morales-Fernandez v. I.N.S.*, 418 F.3d 1116, 1119 (10th Cir. 2005).

Dated: July 29, 2025                              BY THE COURT:

Kathryn A. Starnella
United States Magistrate Judge